STATE of North Dakota, Plaintiff and Appellant,

v.

Fern E. ANDERSON, Defendant and Appellee.

Cr. No. 915.

Supreme Court of North Dakota.

July 21, 1983.

---

James Twomey, Asst. State's Atty., Fargo, for plaintiff and appellant State of North Dakota.

William D. Yuill, of Pancratz, Yuill, Wold, Johnson & Feder, Fargo, for defendant and appellee.

VANDE WALLE, Justice.

The State appealed from an order of the district court, Cass County, suppressing the results of chemical testing performed on blood and urine samples taken from the defendant, Fern E. Anderson, following an automobile accident in which James T. Johnson was killed. We affirm.

I

The accident occurred on May 30, 1982, in the eastbound traffic lane of Interstate 94 on the bridge joining Fargo, North Dakota, and Moorhead, Minnesota. Anderson was operating an automobile in an unlawful manner by going west in the eastbound lane of traffic when she collided with a vehicle driven by James Johnson, who was traveling east in the eastbound traffic lane.

Sergeant Gene Johnson of the North Dakota Highway Patrol was dispatched to the scene of the accident where he found James Johnson dead and Anderson suffering from minor injuries. In an attempt to determine the details of the accident, Sergeant Johnson began interviewing Anderson, who turned out to be very uncooperative, and observed that (1) she was confused, (2) she had slurred speech, and (3) a strong odor of alcohol emanated from her.

These observations as well as Anderson's unwillingness to cooperate with the investigation of the accident led Sergeant Johnson to believe she was under the influence of alcohol. As a result, he told Anderson she would be charged with driving while under the influence, but he did not tell her she was under arrest.

Anderson was then taken to a local hospital by Officer Lawyer of the Fargo police department so that Anderson would receive treatment for her injuries, and Lawyer could obtain blood and urine samples from Anderson. Anderson was admitted to the hospital, where she remained after Officer Lawyer left with the fluid samples. A warrant for Anderson's arrest was issued on June 4, 1982.

The State subsequently charged Anderson with committing the offense of manslaughter in violation of Section 12.1–16–02(1), North Dakota Century Code, for recklessly causing the death of James T. Johnson by driving the wrong way, against traffic, on Interstate 94 and colliding with Johnson's car. Anderson moved the district court to have the urine and blood test results suppressed, and after a hearing on the matter the trial court granted Anderson's motion.

## II

The first issue we consider is whether or not the State's appeal from the trial court's order suppressing evidence should be dismissed.

Before the State may appeal from an order suppressing evidence the prosecuting attorney must file with the district court a statement asserting that without the evidence which has been suppressed the proof available to the State with respect to the crime charged has become either "(1) insufficient as a matter of law, or (2) so weak in its entirety that any possibility of prosecuting such charge to a conviction has been effectively destroyed." Sec. 29–28–07(5), N.D.C.C.

The State in this case has alleged that without the results of the chemical analysis of the blood and urine samples the possibility of prosecuting the charge of manslaughter to a conviction has been effectively destroyed.

In *State v. Dilger*, 322 N.W.2d 461, 463 (N.D.1982), we said, with respect to the requirements which Section 29–28–07(5) imposes on the State in an appeal from a suppression order,

"... the prosecuting attorney should, in addition to the statement prescribed by § 29–28–07(5), provide this court with an explanation, not inconsistent with the record, stating the reasons why the trial court's order has effectively destroyed any possibility of prosecuting the criminal charge to a conviction."

In satisfaction of this requirement, the State contends in its brief that without the results of the chemical testing performed on the blood and urine samples, which showed the percent by weight of alcohol in Anderson's body fluids at the time they were obtained was .26 of one percent, it may not be able to prove that Anderson was intoxicated at the time of the accident.

According to the State, it is essential to show that Anderson was intoxicated when the accident occurred because Anderson is an older woman with an apparent history of unusual behavior which may evoke jury sympathy and make it difficult to prove she acted recklessly.

In order that conduct be considered reckless it must create a high degree of risk of which the actor is actually aware. *State v. Trieb*, 315 N.W.2d 649 (N.D.1982). However, awareness of the risk is not required where its absence is due to self-induced intoxication. Sec. 12.1–02–02(1)(c), N.D.C.C. The State believes it would be extremely difficult (1) to prove recklessness without first proving Anderson was intoxicated, and (2) to prove Anderson was intoxicated without the results from the analysis of the blood and urine samples.

According to Anderson, the suppressed evidence is not essential to prove recklessness because the State may show intoxication through the testimony of Sergeant

Johnson, who observed Anderson immediately after the accident and concluded she was intoxicated. Furthermore, Anderson contends the fact she was driving the wrong way on the Interstate is some indication of reckless conduct.

■ Anderson certainly is correct that Sergeant Johnson's observations and her own actions which caused the accident are some evidence of intoxication and recklessness. However, we will not dismiss the State's appeal unless the prosecutor's determination of the need for the suppressed evidence is clearly inconsistent with the record or is without foundation in reason or logic. *Dilger, supra,* 322 N.W.2d at 463. And in this case we are unable to say that the prosecutor's determination of the need for the blood and urine test results is insupportable.

■ When the prosecutor's determination of the need for suppressed evidence is challenged and is not capable of easy resolution, we will not second-guess the prosecutor by dismissing the State's appeal. See *Dilger, supra,* 322 N.W.2d at 463; *State v. Discoe,* 334 N.W.2d 466 (N.D.1983).

■ We hold, therefore, that the State has established an adequate basis under Section 29–28–07(5) for its appeal from the trial court's suppression order.

### III

Section 39–20–01, N.D.C.C., provides:

"Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of this chapter to a chemical test, or tests, of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. The test or tests shall be administered at the direction of a law enforcement officer only after placing such person except persons mentioned in section 39–20–03 under arrest and informing him that he is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor. The arresting officer shall determine which of the aforesaid tests shall be used."

Anderson moved the trial court for an order suppressing the results of the toxicological evaluation of the blood and urine samples on the ground that the requirement of Section 39–20–01 that a person be placed under arrest before any tests are administered was not complied with.

The State responded to Anderson's motion by arguing that (1) under the particular facts of the case an arrest had occurred before the tests were administered, (2) even if Anderson was not arrested, she voluntarily consented to the taking of the samples, and (3) even if Anderson did not consent, the United States Supreme Court's decision in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), authorizes the taking of the samples.

In its order suppressing the results of the chemical testing of the blood and urine samples, the trial court, so far as we can ascertain, impliedly determined that Anderson had not been placed under arrest before the fluid samples were taken, and specifically determined that Anderson did not voluntarily consent to the taking of the fluid samples.

In its brief on appeal, the State contends the trial court erred in granting the motion to suppress and presents as arguments in support of its contention basically the same three arguments it made in response to Anderson's motion to suppress.

■ In considering the issue of whether or not Anderson was placed under arrest in compliance with Section 39–20–01 before the fluid samples were taken, we note that the existence of an arrest is a question of law. *City of Wahpeton v. Johnson,* 303 N.W.2d 565 (N.D.1982).

■ Our examination of the record shows that although Sergeant Johnson told Anderson she would be charged with driving

while under the influence, neither he nor Officer Lawyer told Anderson she was under arrest. And although it is true that formal words of arrest are not a condition precedent to the existence of an arrest [e.g., *City of Wahpeton, supra,* 303 N.W.2d at 567; *United States v. Vargas,* 643 F.2d 296 (5th Cir.1981)], it also is true that circumstances must exist from which a reasonable person would conclude he was under arrest and not free to leave [e.g., *United States v. Patterson,* 648 F.2d 625 (9th Cir.1981)].

■ There is no clear indication that the law-enforcement officers in this case intended to exercise control over and custody of Anderson so that she was not free to leave. Sergeant Johnson's statement to Anderson that she would be charged with driving while under the influence is an expression of future *intended* action and of itself does not indicate Anderson was then in custody and not free to leave. Section 39–20–01, N.D.C.C., provides that the tests may be administered only after the officer places the person under arrest *and* informs him that he is or will be charged with the offense of driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor. Thus Sergeant Johnson's statement of his future intent meets only one of the requirements of the statute and cannot be a substitute for the other requirement of arrest.

Furthermore, the fact that Sergeant Johnson had Officer Lawyer accompany Anderson to the hospital is as consistent with the view that Lawyer was gathering evidence which could result in the bringing of criminal charges against Anderson as it is with the view that Anderson was under arrest and not free to leave. The former view is buttressed by the fact that Lawyer gave no indication to Anderson or any hospital staff member that she was not free to leave the hospital or to be discharged except into the custody of the police.

■ We believe the facts of this case are insufficient to create in the mind of a reasonable person the belief that he was not free to leave. Therefore, we conclude Anderson was not under arrest when the chemical tests were administered.

■ The State's next argument is that regardless of whether or not there was an arrest, Anderson voluntarily consented to give the fluid samples. This argument conforms to our statement in *Wanna v. Miller,* 136 N.W.2d 563, 569 (N.D.1965), that Section 39–20–01 does not require that a person be placed under arrest before a chemical test may be administered when the person voluntarily consents to a chemical test.

■ The issue of voluntariness is generally decided by examining the totality of the circumstances which surround the giving of consent to see whether it is the product of an essentially free and unconstrained choice or the product of coercion. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Moreover, we have said we will show great deference on appeal to the trial court's determination of voluntariness by refusing to reverse its decision unless it is contrary to the manifest weight of the evidence. *State v. Discoe,* 334 N.W.2d 466 (N.D.1983).

■ In view of the evidence, and in particular the testimony of Officer Lawyer, who accompanied Anderson to the hospital and requested Anderson to permit fluid samples to be taken, that he would have regarded Anderson's actions in response to his request for blood and urine samples as a refusal, we have no difficulty in affirming the trial court's determination that Anderson did not voluntarily consent to give the blood and urine samples.

Finally, the State argues that under the United States Supreme Court's decision in *Schmerber, supra,* the taking of fluid samples from Anderson, even if she did not voluntarily consent, was lawful.

■ The issue in *Schmerber* was whether or not drawing blood from a nonconsent-

ing individual violated the guarantees of the Fourth Amendment against unreasonable searches and seizures. The court stated that the act of drawing blood constitutes a search within the meaning of the Fourth Amendment, but it went on to say that so long as the person from whom the blood is drawn is first placed under arrest *and* administration of the blood test is justified in the circumstances and performed in a reasonable manner, the person's right to be free of unreasonable searches and seizures is not violated.[1]

From our decision that Anderson was not placed under arrest before the blood and urine samples were taken, it follows that *Schmerber* is inapplicable in this case because the decision in *Schmerber* relies essentially upon the fact that the person subjected to compulsory administration of chemical tests was already arrested.

The trial court's order granting Anderson's motion to suppress is affirmed.

ERICKSTAD, C.J., and PEDERSON, SAND and PAULSON, JJ., concur.

1. The State contends that because we have previously held that the proceedings under Chapter 39–20, N.D.C.C., are civil in nature [see, e.g., *Asbridge v. North Dakota Highway Com'r*, 291 N.W.2d 739 (N.D.1980) ], they are separate from criminal proceedings and that if the purpose of the implied-consent law is to be fully realized, it should not be construed to suppress vital physical evidence in a criminal prosecution. The State's position raises some intriguing issues. For example, a charge of driving while under the influence of intoxicating liquor is a criminal offense. If a person properly arrested and informed of the charge refuses to submit to the test, may the arresting officer force him to be tested—despite the statement in Section 39–20–04, N.D.C.C., that the test shall not be given if the person refuses—and use the results of that test in the prosecution of the charge? May the results of the test be used in the prosecution of the offense *and* may the person also have his license revoked for refusal to submit to the test? If the person refuses to consent to the test voluntarily but is forced to submit to the test, what is the meaning of the provision in Section 39–20–04 that no test shall be given if the person refuses? Does it make a difference if the criminal charge is something other than driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor? If the test is administered without the consent of the person arrested and contrary to the provision in Section 39–20–04, is the evidence subject to some form of exclusionary rule? Is the arresting officer who forces a person to submit to the test, contrary to the provisions of the statute, subject to a civil action for damages? Because, under the holding in *Schmerber,* the Fourth Amendment allows a warrantless search of a person, incident to arrest, for the purpose of obtaining bodily fluid samples, may the State nevertheless prohibit such searches? Did the Legislature have a public policy in mind in enacting that portion of Section 39–20–04 which specifies that no test is to be given if the arrested person refuses and, if so, what is the public policy?

Although the State, in its brief, contends that the warrantless search incident to arrest is permitted in this instance under *Schmerber,* it does not speak to any of these issues. *Schmerber* was decided in 1966. Despite *Schmerber's* holding that a person arrested may be required to submit to a compulsory blood test conducted in a reasonable manner without violating the Fourth Amendment, that portion of Section 39–20–04, N.D.C.C., which provides that if "a person under arrest refuses to submit to chemical testing, none shall be given," has not been amended. The 1983 Legislature, although it amended Section 39–20–04 twice [see 1983 N.D.Sess.Laws, Chapters 415 and 444], did not amend this particular provision.

The State notes that we have cited with approval the *Schmerber* holding in several cases. See, e.g., *Hampson v. Satran*, 319 N.W.2d 796 (N.D.1982). None of those cases, however, involve a statutory prohibition against giving the test upon refusal of the person arrested. Furthermore, *Schmerber* was concerned with only the validity of the tests under the United States Constitution; it did not discuss any applicable State statutes relative to giving the test when the person arrested has refused the test. Because of our holding that no arrest occurred and that *Schmerber* is not applicable, the questions we have raised must await another case or a legislative amendment to Section 39–20–04, N.D.C.C.