**STATE of North Dakota, Plaintiff
and Appellant,**

v.

**James E. HANSEN, Defendant
and Appellee.**

**Cr. No. 890001.**

Supreme Court of North Dakota.

July 17, 1989.

Allen Koppy, Morton County State's Atty., Mandan, for plaintiff and appellant.

Rodney K. Feldner, Mandan, for defendant and appellee.

VANDE WALLE, Justice.

This is an appeal by the State from an order in which James E. Hansen's motion to suppress the results of a blood-alcohol test was granted.[1] We affirm.

On July 4, 1988, Hansen was driving a motorcycle in Morton County. Riding as a passenger with him was Wayne Aldinger. As they were traveling west of Mandan, they collided with an automobile driven by Blaine Engelstad. Aldinger was thrown from the motorcycle and struck a sign. Hansen also was thrown from the motorcycle and his right arm was severed above the elbow.

Within minutes of the accident, the Bismarck–Mandan Metro Area Ambulance Service arrived at the scene. Chris Kocourek examined Aldinger and determined that he was dead. Kocourek next attended to Hansen, placing a tourniquet on his arm and an intravenous transfusion in his leg. Hansen was immediately thereafter taken to the Mandan Hospital.

Shortly after the ambulance departed, Albert Salvatore of the North Dakota Highway Patrol arrived at the scene of the accident. In investigating the accident, Salvatore learned that Hansen was the driver of the motorcycle and that Aldinger was dead as a result of the accident. He also learned that the paramedic crew smelled the odor of alcohol emanating from Hansen.

Salvatore contacted North Dakota Highway Patrol Officer Paul Knaak and asked Knaak to proceed to the Mandan Hospital, place Hansen under arrest, and request a sample of Hansen's blood. When Knaak arrived at Mandan Hospital, he was informed that Hansen had been taken to St. Alexius Medical Center in Bismarck for further treatment. En route to St. Alexius Medical Center, Knaak called State Radio and requested that the personnel at St. Alexius be informed that a sample of Hansen's blood would be needed.

Nurse Connie Broesamle took the call from State Radio. She was informed that a sample of Hansen's blood would be needed before he was transferred to the operating room. Broesamle retrieved a blood-alcohol kit, gave it to Nurse Mary Scott, and directed her to take a blood sample. After

---

1. The notice of appeal stated it was an appeal from a memorandum opinion, but it is nevertheless appealable. See *State v. Gelvin,* 318 N.W.2d 302 (N.D.1982), cert. denied, 459 U.S. 987, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982) [where the memorandum opinion contains an order which was intended to be a final order and the order is one from which an appeal may be taken pursuant to statute, we will treat the appeal as an appeal from the order].

the attending physician placed a central-line catheter in Hansen's left subclavian vein, Scott withdrew a blood sample from the catheter.

When Knaak arrived at St. Alexius, a blood sample had already been obtained from Hansen. Knaak was permitted to see Hansen. He asked the defendant if his name is James Hansen, whether he was involved in an accident, and who was driving the motorcycle at the time of the accident. Hansen answered all the questions. Knaak informed Hansen that he was under arrest for driving while under the influence of alcohol.

Hansen was formally charged with driving while under the influence of alcohol in violation of Section 39-08-01, N.D.C.C. He brought a motion to suppress the results of the blood test, arguing that there was no probable cause to believe Hansen was in violation of Section 39-08-01; the sample was obtained prior to an arrest being made; and the sample was not taken pursuant to a valid search warrant. The State argued that Section 39-20-01.1, N.D.C.C., permitted the blood sample to be taken without an arrest under the circumstances of this case.

The trial court found that Section 39-20-01.1 requires that an individual be placed under arrest before a sample may be obtained. Consequently, it granted Hansen's motion to suppress the results of the blood test. The State appealed from that order.

On appeal, the State renewed its contention that Section 39-20.01.1 permits the warrantless withdrawal of an individual's blood without any constitutional requirement of a prior arrest. It concedes that the blood sample was obtained without a search warrant, without Hansen's consent, and without first placing Hansen under arrest.

Section 39-20-01.1 provides:

"Notwithstanding section 39-20-01 or 39-20-04, when the driver of a vehicle is involved in an accident resulting in the death or serious bodily injury, as defined in section 12.1-01-04, of another person, and there is probable cause to believe that the driver is in violation of section 39-08-01, the driver may be compelled by a police officer to submit to a test or tests of the driver's blood, breath, saliva, or urine to determine the alcohol concentration or the presence of other drugs or substances."

In *State v. Anderson,* 336 N.W.2d 634 (N.D.1983), we observed that our implied-consent statute, Section 39-20-01, requires that, absent consent, an individual be placed under arrest before the State may obtain a blood sample. The issue before us now is whether Section 39-20-01.1 dispenses with the arrest requirement when a person has been involved in an accident resulting in death or serious bodily injury.

The State cites two cases which it claims were decided upon statutes similar to Section 39-20-01.1 in which the courts concluded that no arrest was necessary prior to obtaining a blood sample: *Cox v. State,* 473 So.2d 778 (Fla.Dist.Ct.App.1985), and *Commonwealth v. Cieri,* 346 Pa.Super. 77, 499 A.2d 317 (1985). Those cases are not persuasive, however, because the implied-consent statutes of Florida and Pennsylvania do not require an arrest prior to obtaining a blood sample, as does Section 39-20-01. Compare *Filmon v. State,* 336 So.2d 586 (Fla.1976), appeal dismissed 430 U.S. 980, 97 S.Ct. 1675, 52 L.Ed.2d 375 (1977); *State v. Anderson, supra; Commonwealth v. Quarles,* 229 Pa.Super. 363, 324 A.2d 452 (1974).

Section 39-20-01.1 is subject to two reasonable constructions, i.e., that it intended to deny the arrested driver involved in an accident that results in death or serious injury the right to refuse the chemical test or, not only that such driver has no right to refuse the test after arrest but need not be arrested in the first instance to permit the taking of the test. Because both constructions are reasonable we deem the statute ambiguous and resort to legislative history to assist us in determining its intent. See *First Security Bank v. Enyart,* 439 N.W.2d 801 (N.D.1989).

Section 39-20-01.1 was enacted in 1987. See 1987 N.D.Sess.Laws Ch. 460, § 10. The State quotes the following from the

testimony given at a legislative hearing on Senate Bill No. 2468 as authority for its proposition that no arrest is required under Section 39–20–01.1:

"[Section 39–20–01.1] modifies the implied consent law and allows an officer to compel a driver, who has been involved in an accident that results in death or serious personal injury of another, to submit to a chemical test. The present implied consent law requires an arrest before a chemical test can be administered and also states that if the driver refuses to take a chemical test 'none shall be given.' In a series of decisions, including *State v. Anderson*, 336 N.W.2d 634 (N.D.1983), the North Dakota Supreme Court has indicated that if directly presented with the issue, they would likely hold that the present implied consent law prohibits (in a refusal situation) the obtaining of a chemical test. This provision is patterned after the Uniform Vehicle Code."

The above-quoted summary was presented by Bruce Quick, Deputy Attorney General, to the House Transportation Committee. Quick also participated in the discussion of Senate Bill No. 2468 before a conference committee. The minutes of that hearing state:

"*Representative Shaft* said that he wanted to look at some amendment that would not necessarily change the intent of allowing compelled blood tests. That would be picking out that certain area of implied consent where you wouldn't have that right of refusal for serious bodily injury or fatal crashes. The amendments would add some protective language for the individual. The two areas would be that the blood test not take place pre-arrest, which probably wouldn't happen according to case law. However, I would like to see the statute say so."

"*Senator Stenehjem:* I think they have to be arrested before hand...."

.    .    .    .    .

"*Bruce Quick:* The intent of this [bill] is to exempt implied consent law in vehicular homicide cases, basically. Implied consent law says that if you refuse to take a test, none shall be given. Other states have done this either through appellate court decisions or through legislation like this. It basically is word for word from the Uniform Vehicle Code. My interpretation of this, and what the ND Supreme Court has said, is *an arrest would be required.* If you want to make it clear, I would have no objection to amending the language where it says there's probable cause." [Emphasis added.]

We have previously observed that, although as a constitutional matter a blood test may be taken without the consent of the person arrested as a search incident to a lawful arrest [*Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)], our Legislature in enacting Section 39–20–04 specified that if a person refuses to submit to testing under Section 39–20–01, no test is to be given. *State v. Solberg*, 381 N.W.2d 197 (N.D.1986).

The above legislative material indicates that Section 39–20–01.1 was designed to create an exception to our implied-consent law that prohibits chemical testing for blood-alcohol content when an individual chooses to refuse. It does not dispense with the requirement for arrest prior to obtaining a blood sample.

Furthermore, although we are reluctant to decide a constitutional issue if the case may be disposed of on other grounds, we recognize that a serious constitutional question arises if we interpret Section 39–20–01.1 to not require an arrest.

Implied-consent statutes generally require an arrest as a precondition to their applicability. See, e.g., N.Y. Veh. & Traf. Law § 1194 (McKinney Supp.1989); Sec. 39–20–01, N.D.C.C. Courts that have addressed the issue generally conclude that an arrest is not only a statutory requirement, but a constitutional one as well. See Note, *Arrest Requirement for Administering Blood Tests*, 1971 Duke L.J. 601. Thus chemical tests that have been performed prior to arrest and without the suspect's consent are almost uniformly excluded from evidence in drunk-driving proceedings. See, e.g., *Gallagher v. Mich. Secretary of State*, 59 Mich.App. 269, 229

N.W.2d 410 (1975); *Otte v. State*, 172 Neb. 110, 108 N.W.2d 737 (1961); *State v. Richerson*, 87 N.M. 437, 535 P.2d 644 (Ct.App. 1975); *State v. Anderson, supra*. See also 4 Erwin, *Defense of Drunk Driving Cases*, § 32.04[1][a], and cases cited therein.

In *United States v. Harvey*, 701 F.2d 800, 805 (9th Cir.1983), the court stated:

"Requiring an actual arrest prior to the removal of a blood sample will not place an undue burden on police.... Placing the suspect under arrest will help ensure that the police do not arbitrarily violate an individual's privacy. Also, it will sharply delineate the moment at which the police officer determined he or she had probable cause to arrest. In this respect, it will help prevent an after-the-fact justification of the seizure of the suspect and the blood."

Many of these authorities conclude that when weighed against the liberties the Constitution seeks to uphold, requiring an arrest prior to obtaining a blood sample is not too great a burden. E.g., Note, *Arrest Requirement for Administering Blood Tests, supra,* at 617–618:

"Requiring that the police make a lawful arrest prior to taking the suspect into custody for a blood test should be the minimal constitutional standard under the fourth and fourteenth amendments. Such a standard places a relatively little burden on the police since in many cases a warrantless arrest can be made.... A prior arrest requirement would give the suspect the minimum protection of separating the basis of his arrest from the blood test results. It would also place some restraint upon the police officer in requesting a blood test, since, depending on the circumstances, he would either have to take the suspect directly before a magistrate or have the test administered knowing that he had at least committed himself to making the arrest. In either event there would be some assurance that probable cause was based upon considerations independent of the blood test results. Without requiring a prior arrest there seems to be no alternative way of protecting individuals suspected of driving under the influence of alcohol from arbitrary denials of liberty and privacy."

There is, however, a significant body of law which holds that the Fourth Amendment requires probable cause but not an actual arrest prior to obtaining a blood sample in alcohol-related felony offenses. See, e.g., *State v. Salazar*, 146 Ariz. 547, 707 P.2d 951 (Ct.App.1985); *Mercer v. State*, 256 Ark. 814, 510 S.W.2d 539 (1974); *People v. Sutherland*, 683 P.2d 1192 (Colo. 1984); *State v. Curtis*, 106 Idaho 483, 680 P.2d 1383 (Ct.App.1984).

As we have related above, North Dakota, since the enactment of our implied-consent statutes, has prohibited a chemical test in those instances in which the arrested defendant has refused to submit to the test. Because the United States Supreme Court in *Schmerber* clearly held that a test may be taken even in those instances in which the person arrested refuses a test, we have no doubt that the intent of Section 39–20–01.1 was to withdraw from a driver involved in an accident resulting in death or serious bodily injury the right to refuse the chemical test. North Dakota has always required an arrest before the chemical test may be taken unless there is voluntary consent to the test without an arrest. *State v. Abrahamson*, 328 N.W.2d 213 (N.D.1982). We conclude that if the Legislature intended to require the test without an arrest, it would have specifically so stated. Particularly in light of the substantial constitutional issue which arises if the statute is construed to permit the test to be taken not only in the face of a refusal to submit to the test but without a prior arrest as well, we will not construe the words "notwithstanding section 39–20–01 or 39–20–04" to abrogate the requirement that the person be arrested before being forced to submit to the chemical test. A cardinal rule of statutory construction is that, faced with two plausible constructions of a statute, one of which will make the statute constitutional and the other of which would invalidate the statute, the courts will adopt that construction which sustains the statute and to effectuate the legislative purpose which prompted its enactment even though that construction may not appear to be as natural as another construction. E.g., *State v. Borge*, 69 N.D. 1, 283 N.W. 521 (1939).

In this case, Officer Knaak received concise and coherent answers to several questions only minutes after the blood sample was obtained.[2] It would have been no great burden to have placed Hansen under arrest. Although the requirement of an arrest may seem formalistic under the facts of this case, once having construed the statute as requiring the arrest before the blood test could be required, we will not attempt on a case-by-case basis to find a means whereby we may circumvent that requirement.

We conclude that Section 39–20–01.1 requires that the suspect be placed under arrest prior to obtaining a sample of his blood. Because that was not done in this case, the order granting Hansen's motion to suppress the results of the blood-alcohol-content test is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

---

**2.** We note that had Hansen been incapacitated, the State had available to it Section 39–20–03, N.D.C.C., which provides, "Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal, must be deemed not to have withdrawn the consent provided by section 39–20–01 and the test or tests may be given." Other jurisdictions permitting the test without an arrest involve semiconscious or unconscious defendants. E.g., *State v. Oevering,* 268 N.W.2d 68 (Minn.1978).