Kelly WILHELMI, Petitioner
and Appellee,

v.

DIRECTOR OF the DEPARTMENT OF
TRANSPORTATION, Respondent
and Appellant.

Civ. No. 920282.

Supreme Court of North Dakota.

March 24, 1993.

Paulson and Merrick, Jamestown, for petitioner and appellee; argued by Randall L. Hoffman.

Elaine Ayers (argued), Asst. Atty. Gen., Atty. Gen. Office, Bismarck, for respondent and appellant.

MESCHKE, Justice.

The North Dakota Department of Transportation appeals a district court judgment reversing the Department's decision to suspend the driving privileges of Kelly Ann Wilhelmi for 91 days for driving under the influence of alcohol. We reverse the district court and reinstate the suspension.

At 1:55 a.m. on one night in June 1992, Jamestown police officer Thomas R. Nagel responded to a radioed dispatch to investigate an injury accident. At the reported intersection, Nagel found that a motorcycle and a car had collided. Although not discovered until later, the motorcycle's driver had left the scene on foot. The motorcycle's passenger lay on the ground with a head injury. The driver of the car, Wilhelmi, was unconscious behind the wheel.

After he checked the condition of the motorcycle's passenger, Nagel checked Wilhelmi in the car. Nagel "could immediately smell a very strong odor of an alcoholic beverage present." He found that the car's airbag had activated, that Wilhelmi was breathing, and that "as she breathed you could smell the strong odor of alcoholic beverage on her breath." Nagel found some unopened cans of beer in a carton on the passenger-side floorboard of the car, and some empty beer cans of a different brand outside.

Nagel called for ambulances to take Wilhelmi and the motorcycle's passenger to the hospital. He also radioed Jamestown police officer Leroy Gross to assist him. When Gross arrived, he helped the ambulance crew to remove Wilhelmi from the car. In doing so, Gross saw Wilhelmi's unconsciousness; the beer in the car; a large, empty martini or margarita glass on the rear car seat; and that "there was a strong presence of an odor of an alcoholic beverage coming from the vehicle." Nagel told Gross to go to the hospital and "see if [Wilhelmi] had come to or not." If she had not, then Nagel told Gross "to go ahead and draw blood on her because of the injury we had."

When Gross arrived at the hospital, Wilhelmi was still unconscious. After telling hospital personnel that he needed them to draw blood from Wilhelmi as soon as possible, he shook her, called out her name, and told her that she was under arrest for driving under the influence, but she did not respond. Immediately afterward, at 2:52 a.m., Gross had blood taken from the unconscious Wilhelmi. The test results showed that Wilhelmi had a blood-alcohol concentration of .14% by weight.

Around 7:00 p.m. that evening, Wilhelmi left the hospital and returned to her apartment. At Nagel's direction, she went to the Jamestown law enforcement center at 11:00 p.m. where Nagel cited her for violating NDCC 39–08–01 by driving under the influence.

After an administrative hearing, the hearing officer found that "there was a serious injury ... sufficient to exempt [Wilhelmi] from being placed under arrest specifically." The hearing officer conclud-

ed that "[t]he arresting officer had reasonable grounds to believe [Wilhelmi] had been driving a vehicle while under the influence of intoxicating liquor in violation of section 39–08–01, N.D.C.C. [Wilhelmi] did not need to be placed under arrest." The hearing officer suspended Wilhelmi's license for 91 days.

Wilhelmi appealed the Department's decision to the district court. She claimed that the hearing officer's determination that the arresting officer had grounds to believe Wilhelmi had been driving under the influence was not supported by the preponderance of the evidence, and she challenged the hearing officer's conclusion that she "did not need to be placed under arrest."

The district court ruled that "the test was fairly administered," and that "the hearing officer was correct in making a determination that there was no need to place Wilhelmi under arrest prior to the blood being drawn." The court stated, however, that "[t]he fact that the statute dispenses with the requirement that an unconscious person be placed under arrest does not mean it dispenses with the requirement that there be probable cause to support an arrest." The court decided that "[t]he fact that Wilhelmi was in an accident involving serious injury to another person," and the fact that she "was found unconscious in the driver's seat" did not furnish

reasonable grounds for Nagel to believe that Wilhelmi was under the influence.

The district court reversed the Department and set aside the suspension. The Department appeals.

■■■■ The appeal of an administrative agency decision to suspend an operator's license is governed by NDCC Ch. 28–32, the Administrative Agencies Practice Act. *Greaves v. North Dakota State Highway Comm'r*, 432 N.W.2d 879 (N.D.1988). We review the agency decision, not the district court's decision. *North Dakota Department of Transportation v. DuPaul*, 487 N.W.2d 593 (N.D.1992). Unless we conclude that one of the six reasons given in NDCC 28–32–19 exists, we affirm the agency's decision.

■■■■ The Department agrees with the district court that "arrest is not a prerequisite to the taking of a blood sample from an unconscious person." The Department argues that it is enough that "there was probable cause to believe Ms. Wilhelmi had been driving or was in actual physical control of a vehicle in violation of N.D.C.C. § 39–08–01." Wilhelmi counters that she "should have been placed under arrest" before being compelled to give a sample of her blood, and that the facts of this case "are not enough to show probable cause." [1]

1. Wilhelmi attacks the constitutionality of NDCC 39–20–03 for the first time on appeal to this court. She argues that "allowing unconscious persons to be tested is constitutionally impermissible under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the North Dakota Constitution." The Department replies that Wilhelmi failed to raise this question in the district court. With narrow exceptions, we will not consider questions raised for the first time on appeal to this court, particularly constitutional ones. *Wisdom v. State ex rel. North Dakota Real Estate Commission*, 403 N.W.2d 19, 22 (N.D.1987). *See Gange v. Clerk of Burleigh County District Court*, 429 N.W.2d 429 (N.D.1988). Therefore, we do not address Wilhelmi's constitutional challenge to the relevant statute.

Two jurisdictions recently invalidated chemical testing statutes under both federal and state constitutions. The Supreme Court of Illinois held that a statute authorizing a breath test for a driver involved in an accident causing injury or death was unconstitutional. While the statute required a finding of probable cause to believe

that the driver was at least partially at fault in the accident, it did not require probable cause to believe that the person to be tested was intoxicated. *King v. Ryan*, 153 Ill.2d 449, 180 Ill.Dec. 260, 607 N.E.2d 154 (1992).

The Supreme Court of Pennsylvania invalidated a similar statute that authorized chemical tests if a police officer had reasonable grounds to believe that a driver was operating or in actual physical control of a motor vehicle "which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed." *Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308, 313 (Pa.1992). Because the statute required no finding of probable cause to believe that the driver was intoxicated, the court held that it permitted unreasonable searches and seizures. *Id.* 615 A.2d at 313–14.

*Compare Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (Drug and alcohol tests mandated and authorized by Federal Railroad Administra-

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures" and ensures that "no warrants shall issue but upon probable cause...." Article I, section 8 of the North Dakota Constitution similarly protects people from unreasonable searches and seizures. The law on the search and seizure of a blood sample from a nonconsenting driver largely derives from the decision of the United States Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Schmerber had been arrested at a hospital while under treatment for injuries from an accident with the car that he had been driving. Conscious, Schmerber had refused to allow his blood to be withdrawn. At the direction of a police officer, a blood sample was taken from him at the hospital; analysis of the sample indicated his intoxication; and the test report was used as evidence at the trial that convicted him of driving under the influence.

On review, the Court affirmed his conviction, holding that taking the blood sample was a reasonable search incident to Schmerber's arrest, because the officer reasonably believed "that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.' " 384 U.S. at 770, 86 S.Ct. at 1835. The Court concluded that a blood test was reasonable.

> Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol.... Such tests are a commonplace in these days of periodic physical examinations ... the quantity of blood extracted is minimal, and ... the procedure involves virtually no risk, trauma, or pain.... [T]he test was performed in a reasonable manner ... in a hospital environment according to accepted medical practices.

*Schmerber,* 384 U.S. at 771, 86 S.Ct. at 1836 (citations omitted). Later, in *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the Court also held that the evidentiary use of an arrestee's refusal to submit to a blood-alcohol test does not compromise the accused's constitutional right against self-incrimination when state law permits the accused to refuse, but discourages that choice by allowing the refusal to be used against the accused at trial.

In *State v. Hansen,* 444 N.W.2d 330 (N.D.1989), we explained this background for our implied-consent statutes that allow a driver to refuse to submit to a chemical test. NDCC 39–20–04. In *Hansen,* we reviewed the suppression of a blood-sample test taken in a hospital from a conscious driver. "[T]he blood sample was obtained without a search warrant, without Hansen's consent, and without first placing Hansen under arrest." 444 N.W.2d at 331. The prosecution contended that NDCC 39–20–01.1, enacted in 1987, permitted the warrantless withdrawal of a driver's blood without any requirement of a prior arrest, after an accident resulting in death or serious bodily injury. Then, as now, NDCC 39–20–01.1 said:

> *Chemical test of driver in serious bodily injury or fatal crashes.* Notwithstanding section 39–20–01 or 39–20–04, when the driver of a vehicle is involved in an accident resulting in the death or serious bodily injury, as defined in section 12.1–01–04, of another person, and there is probable cause to believe that the driver is in violation of section 39–08–01, the driver may be compelled by a police officer to submit to a test or tests of the driver's blood, breath, saliva, or urine to determine the alcohol concentration or the presence of other drugs or substances.

We held this section ambiguous, reviewed its legislative history, and concluded that, while it uses probable cause to believe that the driver is under the influence, "a serious

---

tion regulations are reasonable under the Fourth Amendment even though there is no requirement of a warrant or reasonable suspicion that any particular employee may be impaired, since the compelling governmental interests served by the regulations outweigh employees' privacy concerns.).

constitutional question arises if we interpret Section 39–20–01.1 to not require an arrest." 444 N.W.2d at 332. Because we thought that "an arrest is not only a statutory requirement, [NDCC 39–20–01], but a constitutional one as well," *id.*, we concluded in *Hansen*, 444 N.W.2d at 333, that the statute nevertheless required an arrest, not just probable cause.

Wilhelmi argues from *Hansen* that, since "she did not voluntarily consent to give a blood sample, because of her unconscious state," an arrest was necessary. The Department distinguishes *Hansen*'s requirement of an arrest of a conscious driver after an injury accident in order to administer an involuntary blood test, arguing that, while Hansen was conscious, Wilhelmi was unconscious. The Department points out that in *Hansen*, 444 N.W.2d at 334 n. 2, we viewed drawing blood from an incapacitated person differently:

> We note that had Hansen been incapacitated, the State had available to it Section 39–20–03, N.D.C.C., which provides, "[a]ny person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal, must be deemed not to have withdrawn the consent provided by section 39–20–01 and the test or tests may be given." Other jurisdictions permitting the test without an arrest involve semiconscious or unconscious defendants. E.g. *State v. Oevering*, 268 N.W.2d 68 (Minn.1978).

"Under these circumstances," the Department argues that "the law recognizes that a formal arrest would be an 'empty gesture,'" and that only probable cause to believe the unconscious driver was under the influence of alcohol is necessary to administer a blood-alcohol test. We agree.

■ The Legislature has excepted an unconscious driver from the arrest requirement:

> The test or tests must be administered at the direction of a law enforcement officer only after placing the person, *except persons mentioned in section 39–20–03*, under arrest and informing that person that the person is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof.

NDCC 39–20–01. (emphasis added). The "persons mentioned in section 39–20–03" are incapacitated ones. NDCC 39–20–03 declares:

> Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal, must be deemed not to have withdrawn the consent provided by section 39–20–01 and the test or tests may be given.

Construed together, these two statutes unambiguously say that an incapacitated driver need not be arrested before being tested for blood-alcohol concentration. In this case, we read these two statutes together with NDCC 39–20–01.1 that requires "probable cause to believe that the driver is [under the influence of alcohol] in violation of section 39–08–01," when the driver is in an accident resulting in serious injury. Thus, we conclude that an arrest is not a statutory precondition of directing a blood test of a driver incapacitated in a serious accident. Probable cause to believe that the incapacitated driver was under the influence of alcohol suffices.

Well-developed precedent holds that the Fourth Amendment requires only probable cause, not an actual arrest, before obtaining a blood sample from a unconscious person for an alcohol-related offense. *See* 2 Wayne R. LaFave, *Search and Seizure* § 5.4(b) (2d ed. 1987). In *People v. Fidler*, 175 Colo. 90, 485 P.2d 725 (1971), a policeman responded to an accident, smelled alcohol on the driver's breath, and found two half-empty wine bottles on the truck floor. The driver was semiconscious and incapable of consent to a test. The officer directed hospital personnel to take blood and urine samples from the driver. On appeal from denial of the driver's motion to suppress the test results, the Colorado Supreme Court upheld the evidentiary use of the tests. Although the record did not indicate when the driver was arrested, that factor was not controlling. Based on *Schmerber*'s view of "evanescent evi-

dence," the court held that probable cause to arrest the driver for intoxicated driving satisfied the Constitution for testing purposes.

Two years later, the United States Supreme Court held similarly. In *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), a strangulation victim's husband went voluntarily to a police station for questioning. During the interrogation, police noticed a dark spot on one of the husband's fingers, and asked permission to take fingernail samples. Over the husband's refusal, and without arresting him, the police took the samples without a search warrant. The Court held the search to be valid because, despite the absence of a formal arrest, the police had probable cause to believe that the man had murdered his wife, and that "justified the police in subjecting him to the very limited search necessary to preserve the highly evanescent evidence they found under his fingernails...." 412 U.S. at 296, 93 S.Ct. at 2004. Therefore, the Court reasoned, probable cause permitted the police to analogize the warrantless search to one incident to a lawful arrest under the doctrine of *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969) (holding warrantless search permissible, if extending only to "arrestee's person and the area 'within his immediate control'"). Like principles apply here.

Minnesota adopted the *Cupp* rationale over a decade ago, holding that a pre-arrest, probable-cause blood sample may be taken, without consent, from an unconscious or uncommunicative driver who is involved in an accident. In *State v. Oevering,* 268 N.W.2d 68 (Minn.1978), police ordered a blood test, without consent, from an uncommunicative, though conscious, driver involved in a fatal accident. On appeal from Oevering's conviction for criminal negligence, the Supreme Court of Minnesota held that

a warrantless body search may be conducted in spite of the fact that the person searched is not formally under arrest when (1) the character of the search is highly unintrusive, (2) the evidence sought will be forever lost absent the

search, and (3) sufficient probable cause exists to support a formal arrest.

*Id.* at 73. Wilhelmi's situation satisfies this analysis: The blood-taking from Wilhelmi was unintrusive, calculated to obtain evidence that would rapidly disappear otherwise and, as we conclude, supported by sufficient probable cause for a formal arrest.

■ We agree with the *Oevering* court: Alcohol-related accidents often produce unconscious or uncommunicative victims. We think it would be absurd to demand the performance of an arrest ritual in the presence of such persons as a prerequisite to the admission of probative blood-alcohol evidence against them. Rather, it seems eminently more sensible to allow the admission of such evidence where probable cause would plainly have supported the arrest of such persons had they been fully conscious.

268 N.W.2d at 73. Contrary to Wilhelmi's assertion that she "should have been placed under arrest," however futile an act in Wilhelmi's unconscious state, we hold that, after a serious, injury-producing accident, probable cause to believe that an unconscious driver is under the influence of alcohol authorizes police to direct blood-testing without formal arrest. The hearing officer correctly concluded that, because Wilhelmi was unconscious, an arrest was unnecessary to take a sample of her blood. *See also State v. Bohling,* 173 Wis.2d 529, 494 N.W.2d 399, 400 (1993) (Dissipation of alcohol from the bloodstream is an exigency that justifies warrantless blood draw, when it is done at the direction of an officer, from a person arrested for a drunk-driving offense, and there is a "clear indication that the blood draw will produce evidence of intoxication."). Probable cause to believe that Wilhelmi was under the influence justified taking the blood sample from her.

"If this court should find that an arrest is not required," Wilhelmi agrees with the Department that probable cause "should be present," but argues that "[i]n our case we have nothing more than an unconscious

victim and a strong presence of alcohol in the victim's car," and that "this is not enough to meet the probable cause requirement." The district court concluded that there was "not sufficient" evidence of probable cause.

Wilhelmi argues that "the fact she had been in an accident is not sufficient in and of itself or in conjunction with other circumstances to show that she was driving under the influence of alcohol." She bases her argument "upon evidence known at the time of the taking of the blood sample that suggests another cause of the accident." Wilhelmi relies on *State v. Bauder*, 433 N.W.2d 552 (N.D.App.1988) and *Moser v. North Dakota State Highway Comm'r*, 369 N.W.2d 650 (N.D.1985), to argue that "this court considers significant the lack of any suggestion of another cause of the accident other than the defendant's driving under the influence of alcohol in determining probable cause." Her reliance is misplaced.

In *Bauder*, the court of appeals concluded that a collision "on the wrong side of the road" together with the presence of an unopened beer can in the driver's vehicle furnished probable cause for an officer to direct taking a blood sample from an unconscious driver. 433 N.W.2d at 553. In *Moser*, this court held that a driver's admission "that he had been drinking beer and lost control of the vehicle, . . . coupled with the lack of any suggestion of another cause" of a vehicle roll-over into a ditch furnished reasonable grounds for arrest of the driver for driving under the influence of alcohol. *Moser*, 369 N.W.2d at 653. Thus, those decisions support the Department's position that probable cause existed here.

While other causes of an accident are relevant to the ultimate weight of the evidence at trial, other possible causes do not negative the reasonableness of a belief that alcohol probably contributed to an accident when there is reasonable evidence of alcohol consumption. The inquiry is whether the officer had reason to believe that unlawful activity probably occurred, not whether there is sufficient evidence for a criminal conviction.

Probable cause is a question of law. Probable cause exists when the facts and circumstances that a police officer knows or that he has reasonably trustworthy information about warrant a person of reasonable caution to believe that an offense has been or is being committed. *Moser*, 369 N.W.2d at 652. Here, there was ample evidence of probable cause to believe that Wilhelmi was under the influence of alcohol. While the officers were unable to see the common indicators of slurred speech, bloodshot eyes, or staggering gait, since Wilhelmi was unconscious, the strong odor of alcohol in Wilhelmi's car and on her breath, the beer and glass in her car, and the serious accident gave the officers reasons to believe that Wilhelmi was probably under the influence of alcohol.

Because the Department's decision correctly applied the law, we reverse the district court and reinstate the suspension of Wilhelmi's license.

NEUMANN and SANDSTROM, JJ., concur.

LEVINE, Justice, concurring in the result.

*Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), is one of those unique-fact cases. The evidence was being destroyed as the defendant stood in the police department trying to get rid of the material under his nails. I question whether the principle applicable to those facts and that kind of immediately disposable evidence applies to an unconscious driver thought to have driven under the influence. Obviously, it did not apply in *State v. Hansen*, 444 N.W.2d 330 (N.D.1989), to a conscious driver. We did not even cite *Cupp*. I would feel more comfortable if less emphasis were placed on it in this case.

I am also unsure of the extent of, or the meaning of, the majority's reliance on *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), a civil case involving

warrantless testing of railroad employees following train accidents. Because, in my view, neither *Cupp* nor *Skinner* applies, I concur in the result.

VANDE WALLE, C.J., concurs.