2007 ND 116

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Denise M. HAHNE, Defendant and Appellee.**

**No. 20070013.**

Supreme Court of North Dakota.

July 25, 2007.

Lloyd C. Suhr, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellant.

Justin J. Vinje, Vinje Law Firm, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] The State of North Dakota appeals the district court's order suppressing evidence in its case against Denise Hahne for driving under the influence of alcohol. Concluding the district court based its decision on an erroneous view of the law that law enforcement must provide motorists with an opportunity to avoid temporary checkpoints, we reverse the suppression order and remand to the district court so it may apply the correct legal standard.

I

[¶ 2] Hahne was cited for driving under the influence of alcohol after the State Highway Patrol stopped her after she failed to stop at a temporary sobriety checkpoint. The officers field-tested Hahne and "got a reading of .092"; a later blood draw revealed her blood-alcohol content was 0.13 percent.

[¶ 3] After a hearing, the district court found that on August 18, 2006, the Highway Patrol had operated a sobriety checkpoint at the intersection of East Main and Bismarck Expressway in the City of Bismarck. According to the district court, troopers cited Hahne at 9:50 p.m. The district court found that the traffic in this area was "busy" and that the speed limit was 50 m.p.h. Although the district court found that "the Troopers followed a well prepared operational order," it suppressed the evidence, finding that a U-turn at night on a curving road with a 50 m.p.h. speed limit was not a legal way for drivers to avoid the checkpoint:

> The Court finds for all practical purposes there was actually no way for Hahne to safely and legally avoid the checkpoint. The only outlet after the notice of the checkpoint is a potentially dangerous U-turn and if other motorists at the same time would attempt such a

turn, this would simply multiply the hazard to the driving public. The Court finds [the] Defendant effectively did not have a safe or legal way to avoid the checkpoint and suppresses all evidence obtained due to the stop of Hahne.

[¶ 4] The State appeals after the district court ordered the evidence of Hahne's intoxication suppressed.

[¶ 5] The district court had jurisdiction under N.D.C.C. § 39–20–06. The notice of appeal from the district court judgment was timely under N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–32–49.

## II

[¶ 6] The State contends the district court erred as a matter of law by granting Hahne's motion to suppress evidence of her intoxication, because the ruling implied that all such checkpoints must provide an opportunity for motorists to avoid them. The State argues that it was wrong to suppress the evidence solely on the basis of a driver's ability to see and avoid the checkpoint. The State contends the district court ruling would limit the effectiveness of these checkpoints, which it says are used to reduce alcohol-related fatalities on our roadways. For the first time on appeal, Hahne contends the State "failed to supply any facts demonstrating the effectiveness of the checkpoint."

A Fourth Amendment "seizure" occurs when a vehicle is stopped by police at a checkpoint. *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 450 [110 S.Ct. 2481, 110 L.Ed.2d 412] (1990); *State v. Everson*, 474 N.W.2d 695, 698 (N.D.1991); *State v. Wetzel*, 456 N.W.2d 115, 117–118 (N.D.1990). However, individualized reasonable suspicion is not required for checkpoint stops. *United States v. Martinez–Fuerte*, 428 U.S. 543,

561–562 [96 S.Ct. 3074, 49 L.Ed.2d 1116] (1976). Checkpoint stops nevertheless present important concerns under the Fourth Amendment and Section 8, Article I of the North Dakota Constitution. *See Sitz*, 496 U.S. at 450 [110 S.Ct. 2481]; *Everson*, 474 N.W.2d at 698–699. The basic question is whether the seizure is reasonable.

*State v. Albaugh*, 1997 ND 229, ¶ 6, 571 N.W.2d 345. If the seizure is reasonable, then it is constitutional. *Illinois v. Lidster*, 540 U.S. 419, 421, 124 S.Ct. 885, 157 L.Ed.2d 843 (2004).

[¶ 7] As in *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), our analysis begins by explaining what this case is not about. First, we need not address whether such checkpoints in general are constitutionally permissible. We have previously held that temporary law enforcement checkpoints or roadblocks established for particular public purposes are, in general, constitutional. *See, e.g., Albaugh*, 1997 ND 229, ¶ 19, 571 N.W.2d 345 (game and fish checkpoint); *City of Bismarck v. Uhden*, 513 N.W.2d 373, 379 (N.D.1994) (sobriety checkpoint); *State v. Everson*, 474 N.W.2d 695, 703 (N.D.1991) (drug checkpoint); *State v. Wetzel*, 456 N.W.2d 115, 121 (N.D.1990) (vehicle safety checkpoint). These decisions follow the line of United States Supreme Court cases that have addressed such checkpoints or roadblocks established to serve "special law enforcement concerns." *Lidster*, 540 U.S. at 424–27, 124 S.Ct. 885 (upholding a roadblock whose "objective was to help find the perpetrator of a specific and known crime, not of unknown crimes of a general sort"); *see, e.g., Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 455, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (sobriety checkpoint); *United States v. Martinez–Fuerte*, 428 U.S. 543, 545, 96 S.Ct. 3074, 49 L.Ed.2d

1116 (1976) (fixed immigration border checkpoint); *but see City of Indianapolis v. Edmond,* 531 U.S. 32, 38, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) (The Court never "indicate[d] approval of a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing" or serve a "general interest in crime control"). Second, we need not address whether, in light of *Edmond,* our prior decisions—*Albaugh, Everson,* or *Wetzel*—have continuing vitality; instead, we leave that for other days and other cases. Third, like *Sitz,* this case contains "[n]o allegations ... of unreasonable treatment of any person after an actual detention at a particular checkpoint." *See Sitz,* 496 U.S. at 450, 110 S.Ct. 2481. Fourth, while suppression of evidence is the customary remedy for Fourth Amendment violations, *see Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *but see Hudson v. Michigan,* — U.S. —, —, 126 S.Ct. 2159, 2165, 165 L.Ed.2d 56 (2006), we need not address the appropriate remedy in this case because the remedy is too far removed from the narrow issue here. Finally, because Hahne raises for the first time on appeal the issue of whether this checkpoint was effective in the context of arrest rates, the issue is not properly preserved, and we will not address it here.

■ [¶ 8] Here we review whether the district court, in granting Hahne's motion to suppress evidence, relied on an erroneous assumption that law enforcement must, as a matter of law, provide a legal opportunity for motorists to avoid such checkpoints. *See State v. Graf,* 2006 ND 196, ¶ 7, 721 N.W.2d 381 (questions of law are fully reviewable on appeal).

■ [¶ 9] In *Michigan Dep't of State Police v. Sitz,* the United States Supreme Court, in upholding the constitutionality of the Michigan sobriety checkpoint program,

applied the three-part balancing test developed in *Brown v. Texas,* 443 U.S. 47, 50–51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), which involves: (1) "a weighing of the gravity of the public concerns served by the seizure," (2) "the degree to which the seizure advances the public interest," and (3) "the severity of the interference with individual liberty." *Brown,* 443 U.S. at 50–51, 99 S.Ct. 2637; *Sitz,* 496 U.S. at 448–55, 110 S.Ct. 2481; *accord Uhden,* 513 N.W.2d at 378. The Court in *Brown* held that a central concern in balancing these factors is "assur[ing] that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown,* 443 U.S. at 51, 99 S.Ct. 2637. Therefore, "the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." *Id.*

[¶ 10] In *Sitz,* applying the first part of the *Brown* test, the U.S. Supreme Court held that "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it. Media reports of alcohol-related death and mutilation on the Nation's roads are legion." 496 U.S. at 451, 110 S.Ct. 2481.

[¶ 11] In *Sitz,* applying the second part of the *Brown* test, the U.S. Supreme Court held that a "searching examination" of the ratio between the number of cars stopped and the number of actual arrests is not necessarily required:

The actual language from *Brown v. Texas,* upon which the Michigan courts based their evaluation of "effectiveness," describes the balancing factor as "the degree to which the seizure advances the public interest." 443 U.S., at 51 [99 S.Ct. 2637]. This passage from *Brown* was not meant to transfer from politically accountable officials to the courts the

decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger. Experts in police science might disagree over which of several methods of apprehending drunken drivers is preferrable [sic] as an ideal. *But for purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources, including a finite number of police officers.* Brown's rather general reference to "the degree to which the seizure advances the public interest" was derived, as the opinion makes clear, from the line of cases culminating in *Martinez–Fuerte, supra. Neither Martinez–Fuerte nor Delaware v. Prouse, 440 U.S. 648 [99 S.Ct. 1391, 59 L.Ed.2d 660] (1979), however, ... supports the searching examination of "effectiveness" undertaken by the Michigan court.*

*Sitz,* 496 U.S. at 453–54, 110 S.Ct. 2481 (emphasis added).

[¶ 12] In *Sitz,* applying the third part of the *Brown* balancing test, the U.S. Supreme Court concluded that the intrusion on motorists' liberty, composed of both "objective" and "subjective" components, was slight. *Sitz,* 496 U.S. at 451, 110 S.Ct. 2481. The Court measured the "objective" intrusion by the duration of the stop and the intensity of the investigation. *Id.* at 451–52, 110 S.Ct. 2481. The Court then described the "subjective" intrusion of the stop as "the fear and surprise engendered in law-abiding motorists by the nature of the stop." *Id.* at 452, 110 S.Ct. 2481. Because uniformed officers made the stops under pre-established guidelines, the Court concluded that this "subjective" intrusion was minimal. *Id.* at 453, 110 S.Ct. 2481. According to the *Sitz* majority, the Michigan appellate court had concluded that the checkpoint stop caused unreasonable subjective intrusion because "the record failed to demonstrate that approaching motorists would be aware of their option to make U-turns or turnoffs to avoid the checkpoint." *Id.* at 452, 110 S.Ct. 2481. The Court in *Sitz* concluded, however, that "the Michigan courts misread our cases concerning the degree of 'subjective intrusion' and the potential for generating fear and surprise." *Id.* The Court ruled that "[t]he 'fear and surprise' to be considered are not the natural fear of one who has been drinking over the prospect of being stopped at a sobriety checkpoint but, rather, the fear and surprise engendered in law-abiding motorists by the nature of the stop." *Id.* The *Sitz* majority held that stationary checkpoints visible to motorists from a distance, operated under established guidelines by uniformed officers, do not generate an undue amount of fear or annoyance to a law-abiding motorist. *Id.* The Court illustrated its point by comparing checkpoint stops to roving patrol stops:

> The circumstances surrounding a checkpoint stop and search are far less intrusive than those attending a roving-patrol stop. Roving patrols often operate at night on seldom-traveled roads, and their approach may frighten motorists. *At traffic checkpoints the motorist can see that other vehicles are being stopped, he can see visible signs of the officers' authority, and he is much less likely to be frightened or annoyed by the intrusion.*

*Id.* at 453, 110 S.Ct. 2481 (internal quotations and citation omitted) (emphasis added). Therefore, the Court concluded such stationary checkpoints, in general, do not create an unconstitutional degree of subjective intrusion on a motorist's personal liberties. *Id.*

[¶ 13] Although the driver in *City of Bismarck v. Uhden* did not challenge the constitutionality of the checkpoint on the basis of the degree of intrusion into his individual liberty, the *Uhden* Court did comment on how a checkpoint's visibility might affect that intrusion:

> At oral argument, Uhden's attorney did allege that the *location of the checkpoint was such that it could not be viewed by motorists until it was too late for the motorists to turn off the road and avoid it.* We do not belittle the significance of this alleged fact and the intrusion caused thereby. *This would be one relevant factor in the analysis of the intrusiveness of the stop, though not itself conclusive, see Everson, supra,* but we do not find in the record before us evidence supporting the allegation of Uhden's attorney.

*Uhden*, 513 N.W.2d at 378 n. 8.

[¶ 14] In this case, the district court found "for all practical purposes there was actually no way for Hahne to safely and legally avoid the checkpoint. The only outlet after the notice of the checkpoint is a potentially dangerous U-turn and if other motorists at the same time would attempt such a turn, this would simply multiply the hazard to the driving public." This finding implies that law enforcement must provide motorists with a way to avoid these types of checkpoints or roadblocks as a matter of law.

[¶ 15] Following *Sitz* and its progeny, we hold law enforcement checkpoints need not, as a matter of law, provide motorists with a way to avoid them. When considering the constitutional reasonableness of a checkpoint, avoidability is one factor that may be considered in evaluating the intrusion on the personal liberty of individual motorists.

## III

[¶ 16] The district court order is reversed and the case remanded for proceedings consistent with this opinion to determine whether the checkpoint Hahne encountered was constitutionally reasonable.

[¶ 17] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.