# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 201

State of North Dakota,

Plaintiff and Appellant

v.

Travis Dean Bell,

Defendant and Appellee

## No. 20250092

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Theodore Sandberg, Judge.

REVERSED AND REMANDED.

Opinion of the Court by McEvers, Justice.

Rachel R. Egstad, Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellant.

Drew J. Hushka (argued) and Mark A. Friese (on brief), Fargo, ND, for defendant and appellee.

**State v. Bell**
**No. 20250092**

**McEvers, Justice.**

[¶1]   The State appeals from a district court order granting Travis Bell's motion to suppress evidence of a chemical breath test and results. We conclude the court misapplied the law and erred as a matter of law in its decision holding the State failed to prove Bell voluntarily consented to the chemical breath test after being informed of the implied consent advisory under N.D.C.C. § 39-20-01. We reverse and remand for further proceedings consistent with this opinion.

I

[¶2]   On June 3, 2024, Bell was the driver of a vehicle in a traffic crash with another vehicle at or near the intersection of Airport Road and Highway 2 in Grand Forks County. Two individuals in the other vehicle were injured; one of whom, a minor child, later died as a result of the injuries sustained in the crash. Law enforcement and other first responders arrived at the crash scene, including officers from the Grand Forks County Sheriff's Office and City of Grand Forks Police, along with the North Dakota Highway Patrol. The Highway Patrol took the lead in investigating the incident. As part of the investigation, a Highway Patrol trooper investigated Bell for driving under the influence and subsequently conducted a chemical breath test to determine Bell's blood alcohol content.

[¶3]   In June 2024, the State filed an amended information charging Bell with one count of criminal vehicular injury under N.D.C.C. § 39-08-01.2(2), and one count of criminal vehicular homicide under N.D.C.C. § 39-08-01.2(1). Both of the charges allege Bell committed the charged offenses while driving under the influence under N.D.C.C. § 39-08-01. In December 2024, Bell moved the district court to exclude the chemical breath test and results, arguing the evidence was obtained contrary to statute and in violation of his due process rights. The State opposed the motion. In February 2025, the district court held an evidentiary hearing on Bell's motion to suppress. The trooper, who conducted the chemical breath test on Bell, testified at the hearing, and the trooper's body-worn camera video was also admitted into evidence.

1

[¶4]   In March 2025, the district court entered an order granting Bell's motion and suppressing the chemical breath test, the consent, and the results of the chemical test. The State has appealed the district court's order suppressing evidence.

II

[¶5]   Under N.D.C.C. § 29-28-07, the prosecution's right to appeal in a criminal case is strictly limited. *State v. Boehm*, 2014 ND 154, ¶ 6, 849 N.W.2d 239. "The State may appeal from an order suppressing evidence if the appeal is 'accompanied by a statement of the prosecuting attorney asserting that the appeal is not taken for purpose of delay and that the evidence is substantial proof of a fact material in the proceeding.'" *Id.* (quoting N.D.C.C. § 29-28-07(5)). The prosecution must support its appeal "with an explanation of the relevance of the suppressed evidence," and the prosecuting attorney's "statement should not merely paraphrase the requirements of N.D.C.C. § 29-28-07(5)." *Boehm*, ¶ 6 (quoting *State v. Emil*, 2010 ND 117, ¶ 6, 784 N.W.2d 137). The record reflects the State filed a notice of appeal and a statement of the prosecuting attorney. The statement of the prosecuting attorney asserts the "suppressed Intoxilyzer result is a substantial proof of a material fact," the test result is "often considered the most objective and compelling evidence that a driver was 'under the influence of intoxicating liquor,'" and the appeal is not taken for purpose of delay. The State complied with the requirements of N.D.C.C. § 29-28-07(5), and "a review of the facts clearly demonstrates the relevance of the evidence suppressed." *Boehm*, ¶ 6 (quoting *Emil*, ¶ 6). The State may therefore appeal.

III

[¶6]   Our standard for reviewing a district court's decision on a motion to suppress is well established:

> We defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. Our standard of review recognizes the importance of the district

2

court's opportunity to observe the witnesses and assess their credibility. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Gothberg*, 2024 ND 217, ¶ 10, 14 N.W.3d 578 (quoting *State v. Casatelli*, 2021 ND 11, ¶ 8, 953 N.W.2d 656). We review questions of law under the de novo standard of review. *Id.*; *State v. Genre*, 2006 ND 77, ¶ 12, 712 N.W.2d 624.

IV

[¶7]   The State argues the district court misapplied the law and a question of law exists between the analysis of *State v. Devine*, 2020 ND 208, 950 N.W.2d 183, and N.D.C.C. § 39-20-01.1, in conjunction with implied consent and N.D.C.C. §§ 39-20-01 and 39-08-01.

A

[¶8]   When interpreting a statute, our primary goal is to determine the legislature's intent by first looking to the statute's plain language and attempting to give each word, phrase, and sentence its ordinary meaning. *State v. Long*, 2020 ND 216, ¶ 6, 950 N.W.2d 178; *Schulke v. Panos*, 2020 ND 53, ¶ 8, 940 N.W.2d 303. When a provision is unambiguous, we look to the plain language of the statute to ascertain its meaning. *Long*, ¶ 6; *State v. Comes*, 2019 ND 290, ¶ 7, 936 N.W.2d 114; *see also* N.D.C.C. § 1-02-05 ("When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). "If a statute is ambiguous[,] a court may reference extrinsic aids, such as legislative history, to interpret the statute." *Long*, ¶ 6. "A statute is ambiguous when it is susceptible to differing, but rational, meanings." *Id.* (quoting *Schulke*, ¶ 8).

[¶9]   "Statutes are construed as a whole and harmonized to give meaning to related provisions." *Long*, 2020 ND 216, ¶ 7 (quoting *State v. Marcum*, 2020 ND 50, ¶ 21, 939 N.W.2d 840). We consider the context of the statutes and the purposes for which they are enacted. *Id.*; *see also DeForest v. N.D. Dep't of Transp.*, 2018 ND 224, ¶ 9, 918 N.W.2d 43. "We also consider the actual language, its connection with other clauses, and *the words or expressions which obviously are by design omitted*. In construing statutes and rules, the law is what is said, not what

3

is unsaid, and the mention of one thing implies exclusion of another." *Long*, ¶ 7 (emphasis added) (quoting *State v. Welch*, 2019 ND 179, ¶ 7, 930 N.W.2d 615).

B

[¶10] Chapter 39-20, N.D.C.C., addresses chemical tests for intoxication and implied consent for individuals who operate motor vehicles. At the outset, we examine the interplay between N.D.C.C. § 39-20-01 and N.D.C.C. § 39-20-01.1.

[¶11] Under N.D.C.C. § 39-20-01(1), "[a]ny individual who operates a motor vehicle on a highway . . . in this state is deemed to have given consent, and shall consent, *subject to the provisions of this chapter*, to a chemical test, or tests, of the blood, breath, oral fluid, or urine for the purpose of determining the alcohol concentration or presence of other drugs, or combination thereof, in the individual's blood, breath, oral fluid, or urine." (Emphasis added.) Section 39-20-01 further provides, in part:

> 2. The test or tests *must be administered* at the direction of a law enforcement officer *only after placing the individual under arrest for violation of section 39-08-01* or an equivalent offense. . . . The law enforcement officer shall determine which of the tests is to be used.
> 3. a. The law enforcement officer *shall inform* the individual North Dakota law *requires the individual to take a chemical test* to determine whether the individual is under the influence of alcohol or drugs and *refusal of the individual to submit to a test directed by the law enforcement officer may result in a revocation of the individual's driving privileges* for a minimum of one hundred eighty days and up to three years.
> b. If an individual *refuses to submit to testing under this section*, proof of the refusal is not admissible in any administrative proceeding under this chapter if the law enforcement officer fails to inform the individual as required under subdivision a.

(Emphasis added.)

[¶12] Section 39-20-01.1, N.D.C.C., provides:

> 1. If the driver of a vehicle is involved in a crash resulting in the death of another individual, and there is *probable cause to believe that*

4

*the driver is in violation of section 39-08-01*, a law enforcement officer *shall request the driver to submit to a chemical test or tests* of the driver's blood, breath, or urine to determine the alcohol concentration or the presence of other drugs or substances, or both.

2. If the driver of a vehicle is involved in a crash resulting in the serious bodily injury, as defined in section 12.1-01-04, of another individual, and there is *probable cause to believe that the driver is in violation of section 39-08-01*, a law enforcement officer *shall request the driver to submit to a test or tests* of the driver's blood, breath, or urine to determine the alcohol concentration or the presence of other drugs or substances, or both.

3. If the driver *refuses to submit to a chemical test or tests* of the driver's blood, breath, or urine and exigent circumstances are not present, the law enforcement officer *shall request a search warrant to compel the driver to submit to a chemical test or tests* of the driver's blood, breath, or urine to determine the alcohol concentration or the presence of other drugs or substances, or both.

4. The approved methods of the director of the state crime laboratory or the director's designee must be followed in collecting and preserving a sample of the driver's blood, breath, or urine and conducting a chemical test or tests to determine the alcohol concentration or the presence of other drugs or substances, or both.

(Emphasis added.) *See* 2013 N.D. Sess. Laws, ch. 301, § 12 (effective July 1, 2013).

[¶13] In granting Bell's suppression motion, the district court initially considered whether N.D.C.C. §§ 39-20-01 and 39-20-01.1 are intended to "work in concert" or are "separate and distinct," such that only one of the statutes controls the disposition of this case. The court concluded these statutes do not "work in concert" and are "separate and distinct." In reaching its conclusion, the court relied, in part, on this Court's decision in *Devine*, 2020 ND 208.

[¶14] In *Devine*, 2020 ND 208, ¶ 14, we held the statutory exclusionary rule, previously codified within N.D.C.C. § 39-20-01, did not apply to a chemical test "administered under N.D.C.C. § 39-20-01.1." In *Devine*, after having secured a search warrant for a blood sample, law enforcement read Devine an incomplete implied consent advisory, omitting the portion of the then-advisory that refusal to submit to a urine or breath test was a crime punishable in the same manner as driving under the influence. *Id.* ¶ 3. In denying Devine's subsequent suppression

5

motion, the district court held the blood-test results were admissible, reasoning that because law enforcement had obtained a search warrant, it was unnecessary to secure Devine's consent after securing the warrant, and any deficiency in reading the advisory was therefore immaterial. *Id.* ¶ 4. This Court affirmed, but for a different reason. *Id.* ¶ 15.

[¶15] In affirming, we distinguished between whether the test was "administered under" N.D.C.C. § 39-20-01 or N.D.C.C. § 39-20-01.1. *Devine*, 2020 ND 208, ¶¶ 12-15. We held N.D.C.C. § 39-20-01.1 applies when a driver of a vehicle is involved in a crash that results in the death or serious bodily injury of another individual. *Id.* ¶¶ 12-13. We further held the statutory exclusionary rule, as codified at the time in N.D.C.C. § 39-20-01(3)(b), was expressly limited to testing "administered under this section," i.e., N.D.C.C. § 39-20-01. *Id.* ¶ 14. We therefore concluded the statutory language was unambiguous, applied the statutory exclusionary rule "only to tests administered under N.D.C.C. § 39-20-01," and did not "extend the exclusionary rule to tests administered under N.D.C.C. § 39-20-01.1." *Id.*

[¶16] This Court, however, did not take an "either-or" approach in deciding which statute applied. We merely stated, "The *circumstances of this case* fall within the statutory scope of N.D.C.C. § 39-20-01.1 pertaining to the chemical testing of a driver involved in a crash resulting in serious bodily injury or death." *Devine*, 2020 ND 208, ¶ 13 (emphasis added). We did not hold a case could not fall within the scope of both N.D.C.C. §§ 39-20-01 and 39-20-01.1. Nor did we hold a chemical test could not be "administered under" both N.D.C.C. §§ 39-20-01 and 39-20-01.1. We only held the former statutory exclusionary rule did not apply because, under the facts of that case, the officer's chemical test was administered under N.D.C.C. § 39-20-01.1. *Id.*; *cf. City of Fargo v. Hofer*, 2020 ND 252, ¶ 13, 952 N.W.2d 58 (holding, despite obtaining a search warrant, because officer administered the urine test under N.D.C.C. § 39-20-01, the officer was required to inform defendant under N.D.C.C. § 39-20-01(3) for test results to be admissible in a criminal proceeding under the then-statutory exclusion). Put another way, the *Devine* case does not preclude an officer from administering a test under section 39-20-01 when a crash results in a death or serious bodily injury; it only held the former statutory exclusionary rule did not apply to a chemical test

administered under section 39-20-01.1. *Devine*, ¶¶ 14-15. The question of whether the defendant had "consented" to the blood test was not presented; the issue was whether the blood test was admissible given the incomplete implied consent advisory. Moreover, because the statutory exclusionary rule has since been removed from section 39-20-01, the *Devine* case has no application here.

[¶17] The State argues the district court erred in holding N.D.C.C. §§ 39-20-01 and 39-20-01.1 do not work in concert. The State's position is the implied consent advisory under N.D.C.C. § 39-20-01(3)(a) must be given before a chemical test can be administered, including a chemical test requested under N.D.C.C. § 39-20-01.1, and that section does not remove the requirement an officer give a driver the advisory, regardless of whether it involves a misdemeanor DUI charge or the potential for a charge of DUI resulting in serious bodily injury or death. The State argues the statutes were meant to work in concert, and section 39-20-01.1 alters section 39-20-04(1) in cases of serious bodily injury or death because the evidence is so important the officer should seek a search warrant. The State contends the purpose of section 39-20-01.1 is simply to modify the "legislative grace" of a driver's right to refuse under section 39-20-04 in that section 39-20-01.1 "takes away the person's legislative grace to refuse chemical testing by instructing law enforcement to obtain a search warrant."

[¶18] The history of N.D.C.C. § 39-20-01.1 supports the conclusion that sections 39-20-01 and 39-20-01.1 must be read in conjunction with each other. The legislature enacted section 39-20-01.1 in 1987, which at the time provided:

> *Notwithstanding section 39-20-01 or 39-20-04*, when the driver of a vehicle is involved in an accident resulting in the death or serious bodily injury, as defined in section 12.1-01-04, of another person, and there is probable cause to believe that the driver is in violation of section 39-08-01, the driver *may be compelled* by a police officer to submit to a test or tests of the driver's blood, breath, saliva, or urine to determine the alcohol concentration or the presence of other drugs or substances.

1987 N.D. Sess. Laws ch. 460, § 10 (emphasis added). Section 39-20-01.1's plain language in 1987 provided that when a police officer, in the officer's discretion,

was allowed to compel a driver to submit to a test without a search warrant and "[n]otwithstanding sections 39-20-01 or 39-20-04."

[¶19] In *State v. Hansen*, this Court construed the 1987 version of N.D.C.C. § 39-20-01.1, in conjunction with the implied-consent statutes requiring an arrest before a test may be given. 444 N.W.2d 330, 332-33 (N.D. 1989). The Court held that despite using the language "probable cause to believe that the driver is" under the influence, section 39-20-01.1 also required an arrest, not just probable cause. This Court held the section was subject to two reasonable interpretations and ambiguous, examined the statute's legislative history, and concluded "a serious constitutional question arises" if the section were to be interpreted not to require an arrest. *Id.* at 332; *see also Wilhelmi v. Dir. of Dep't of Transp.*, 498 N.W.2d 150, 154 (N.D. 1993) (discussing the *Hansen* holding requiring an arrest under N.D.C.C. § 39-20-01.1). As this Court explained, section 39-20-01.1 "was designed to create an exception to our implied-consent law that prohibits chemical testing for blood-alcohol content when an individual chooses to refuse." *Hansen*, at 332; *see also* N.D.C.C. § 39-20-04. This Court explained:

> Because the United States Supreme Court in *Schmerber* [*v. California*, 384 U.S. 757 (1966)] clearly held that a test may be taken even in those instances in which the person arrested refuses a test, we have no doubt that the intent of Section 39-20-01.1 was to withdraw from a driver involved in an accident resulting in death or serious bodily injury the right to refuse the chemical test. North Dakota has always required an arrest before the chemical test may be taken unless there is voluntary consent to the test without an arrest. *State v. Abrahamson*, 328 N.W.2d 213 (N.D. 1982). We conclude that if the Legislature intended to require the test without an arrest, it would have specifically so stated.

*Hansen*, at 333. *Cf. Birchfield v. North Dakota*, 579 U.S. 438, 475 (2016) (observing, "Under current North Dakota law, only in cases involving an accident that results in death or serious injury may blood be taken from arrestees who resist. *Compare* N.D. Cent. Code Ann. §§ 39-20-04(1), 39-20-01, *with* § 39-20-01.1."). The Court in *Hansen* further concluded the words "notwithstanding section 39-20-01 or 39-20-04" did not abrogate the requirement the person be arrested before being forced to submit to a chemical test. *Hansen*, at 333.

[¶20] In 2009, the legislature amended N.D.C.C. § 39-20-01.1 to read:

> 1. *Notwithstanding section 39-20-01 or 39-20-04*, when the driver of a vehicle is involved in an accident resulting in the death of another person, and there is probable cause to believe that the driver is in violation of section 39-08-01 or has committed a moving violation as defined in section 39-06.1-09, the driver *must be compelled* by a police officer to submit to a test or tests of the driver's blood, breath, or urine to determine the alcohol concentration or the presence of other drugs or substances.
> 2. *Notwithstanding section 39-20-01 or 39-20-04*, when the driver of a vehicle is involved in an accident resulting in the serious bodily injury, as defined in section 12.1-01-04, of another person, and there is probable cause to believe that the driver is in violation of section 39-08-01, a law enforcement officer *may compel* the driver to submit to a test or tests of the driver's blood, breath, or urine to determine the alcohol concentration or the presence of other drugs or substances. The methods and techniques established by the director of the state crime laboratory must be followed in collecting and preserving a specimen or conducting a test.

2009 N.D. Sess. Laws. ch. 339, § 1 (emphasis added). In the 2009 version, the legislature divided N.D.C.C. § 39-20-01.1 into two subsections, with subsection 1, requiring "the driver must be compelled by a police officer to submit to a test or tests of the driver's blood, breath, or urine" when an accident results in the death of another; and subsection 2 providing "a law enforcement officer may compel the driver to submit to a test or tests of the driver's blood, breath, or urine" when an accident results in serious bodily injury. Under subsection 1, the legislature removed an officer's discretion to decide whether to "compel" the driver to submit to a chemical test.

[¶21] In 2013, the legislature amended N.D.C.C. § 39-20-01.1 to its present form, as set forth above. In this version, the legislature specifically removed the phrase, "[n]otwithstanding section 39-20-01 or 39-20-04," and added the language, "shall request," to both subsections 1 and 2. The legislature added subsection 3, which provides the law enforcement officer "shall request a search warrant to compel a driver to submit" to a chemical test when a driver "refuses" to submit to a chemical test and exigent circumstances are not present. The section's plain

language thus removes an officer's discretion whether to request a test; requires an officer first to "request" before compelling a driver to submit to a chemical test; and requires the officer to seek a search warrant to "compel" a test when the "exigent circumstances" exception does not apply.

[¶22] As noted, the legislature removed "[n]otwithstanding section 39-20-01 or 39-20-04," from section 39-20-01.1(1) and (2). Generally, the ordinary meaning of "notwithstanding" is "despite," "in spite of," or "without prevention or obstruction from or by." *See N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 301 (2017) (citing *Webster's Third New International Dictionary* 1545 (1986); *Black's Law Dictionary* 1091 (7th ed. 1999) ("Despite; in spite of")); *see also Black's Law Dictionary* 1277 (12th ed. 2024). "In statutes, the word [notwithstanding] 'shows which provision prevails in the event of a clash.'" *N.L.R.B.* at 301 (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 126-27 (2012)). "A 'notwithstanding' clause does not naturally give rise to such an inference; it just shows which of two or more provisions prevails in the event of a conflict. Such a clause confirms rather than constrains breadth." *Id.* at 302. "When the Legislature intends for a statute to prevail over all contrary law, it typically signals this intent by using phrases like 'notwithstanding any other law' or 'notwithstanding other provisions of law.'" *Hohenshelt v. Superior Ct. of Los Angeles Cnty.*, 573 P.3d 944, 955 (Cal. 2025).

[¶23] Accordingly, by removing the "notwithstanding" clauses from N.D.C.C. § 39-20-01.1, the legislature signaled its intent that requests for chemical tests under section 39-20-01.1(1) and (2) do not abrogate or operate to the exclusion of an officer's direction to take a chemical test under section 39-20-01. "We construe statutes in a way which does not render them meaningless because we presume the Legislature acts with purpose and does not perform idle acts." *Meier v. N.D. Dep't of Hum. Servs.*, 2012 ND 134, ¶ 10, 818 N.W.2d 774.

[¶24] To the extent the *Hansen* case applies an earlier version, we conclude it still stands for the proposition that N.D.C.C. § 39-20-01.1's continued use of the language, "probable cause to believe that the driver is in violation of section 39-08-01," requires an arrest before requesting a chemical test and that the section operates to withdraw a driver's "legislative grace" or right to refuse a chemical

test provided under N.D.C.C. § 39-20-04. However, in the absence of exigent circumstances, the officer must obtain a search warrant to "compel" a test, satisfying reasonableness under the Fourth Amendment. *State v. Morales*, 2015 ND 230, ¶ 15, 869 N.W.2d 417. By removing the "notwithstanding" clauses in subsections 1 and 2, and consistent with *Hansen*, the statute does not operate to abrogate or exclude requirements of N.D.C.C. § 39-20-01 or N.D.C.C. § 39-20-04. Rather, these statutes must be read in conjunction with each other.

[¶25] The State argues the implied consent advisory under N.D.C.C. § 39-20-01 must still be given, even when an officer requests a chemical test under section 39-20-01.1. On its face, section 39-20-01.1 does not require an advisory be given before requesting a chemical test; however, an officer may initially be proceeding under both sections early in a DUI investigation. It is when a driver refuses to submit to a chemical test that an officer has differing statutory obligations whether to continue seeking a chemical test. Generally, "[t]he implied consent advisory establishes that consent to testing is presumed," and "[t]his presumption is tempered by legislative grace allowing a driver to opt out of testing." *City of Jamestown v. Nygaard*, 2021 ND 172, ¶ 15, 965 N.W.2d 47 (quoting *Grosgebauer v. N.D. Dep't of Transp.*, 2008 ND 75, ¶ 11, 747 N.W.2d 510). In *Alvarado v. North Dakota Department of Transportation*, this Court specifically held that a driver's refusal requires "a valid request to submit to testing pursuant to N.D.C.C. § 39-20-01." 2019 ND 231, ¶ 5, 932 N.W.2d 911.

[¶26] In *Jundt v. North Dakota Department of Transportation*, we discussed the present version of N.D.C.C. § 39-20-01(3)(b) and the legislature's 2019 amendments removing the statutory exclusionary rule:

> In the 2019 amendments, the legislature removed the consequences for failing to read the implied consent advisory from N.D.C.C. § 39-20-01(3)(b) unless the individual refuses a chemical test. The failure to read the advisory is significant in an administrative proceeding if the individual refuses a chemical test. The penalty for failing to read the implied consent advisory no longer applies when the individual consents to a chemical test.

11

2020 ND 232, ¶ 16, 951 N.W.2d 243. We further noted that "[u]nder N.D.C.C. § 39-20-01(1), an individual consents to chemical testing by operating a motor vehicle" and that "[t]he implied consent advisory allows an individual to withdraw his or her consent and say 'no' to a chemical test." *Id.* ¶ 17. "However, when an arrested person agrees to chemical testing, the implied consent requirements of N.D.C.C. § 39-20-01 do not apply." *Id.* Similarly, while N.D.C.C. § 39-20-01.1(3) governs a law enforcement officer's actions when a driver refuses the request to submit to a chemical test under N.D.C.C. § 39-20-01.1(1) or (2), the requirements of subsection 3 do not apply when the driver agrees to take the requested chemical test.

[¶27] Here, Bell consented to the chemical tests; therefore, the dispositive issue on appeal is whether the district court erred in finding his consent was coerced and not voluntarily obtained.

V

[¶28] The State argues Bell freely and voluntarily consented to the chemical test for intoxication after being properly informed of the implied consent advisory under N.D.C.C. § 39-20-01. Bell argues the district court correctly suppressed the chemical breath test evidence when the State failed to establish his consent to the chemical test was voluntary.

A

[¶29] "The Fourth Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment, and Article I, section 8, of the North Dakota Constitution, protect individuals from unreasonable searches and seizures." *Gothberg*, 2024 ND 217, ¶ 11 (quoting *State v. Terrill*, 2018 ND 78, ¶ 7, 908 N.W.2d 732). "[A]dministration of a breath test to determine alcohol consumption is a search." *McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 10, 848 N.W.2d 659; *see also Skinner v. Railway Labor Execs.' Ass'n*, 489 U.S. 602, 616-17 (1989). "Warrantless searches are unreasonable unless they fall within a recognized exception to the warrant requirement." *Gothberg*, ¶ 11 (quoting *Genre*, 2006 ND 77, ¶ 17). "Absent an exception to the warrant requirement, the exclusionary rule requires suppression of evidence obtained in violation of the

12

federal and state constitutions' protections against warrantless searches or seizures." *Morales*, 2015 ND 230, ¶ 8; *see also State v. Schmidt*, 2016 ND 187, ¶ 22, 885 N.W.2d 65. "Exceptions to the warrant requirement include consent and exigent circumstances." *Morales*, ¶ 8.

[¶30] Consent is one exception to the warrant requirement, provided the consent is voluntary. *State v. Fleckenstein*, 2018 ND 52, ¶ 6, 907 N.W.2d 365. The State has the burden of proof to show voluntariness. *Id.* "A district court must determine whether the consent was voluntary under the totality of the circumstances." *Schmidt*, 2016 ND 187, ¶ 23 (cleaned up). We have articulated two nondeterminative considerations for a court's inquiry on whether consent is voluntary:

> Consent is voluntary when it is the product of a free and unconstrained choice and not the product of duress or coercion, and to decide whether consent is voluntary we consider: (1) the characteristics and condition of the accused at the time of the consent, including age, sex, race, education level, physical or mental condition, and prior experience with police; and (2) the details of the setting in which the consent was obtained, including the duration and conditions of detention, police attitude toward the defendant, and the diverse pressures that sap the accused's powers of resistance or self-control.

*Id.* ¶ 24 (cleaned up) (quoting *State v. Torkelsen*, 2008 ND 141, ¶ 21, 752 N.W.2d 640); *see also Fleckenstein*, ¶ 6. "Whether an officer has consent is a question of fact." *Schmidt*, ¶ 23 (quoting *State v. Albaugh*, 2007 ND 86, ¶ 21, 732 N.W.2d 712); *see also Gothberg*, 2024 ND 217, ¶ 12 ("The existence of consent is a question of fact to be determined from the totality of the circumstances." (citation omitted)). While we will give "great deference" to a district court's voluntariness determination because the court is in a superior position to judge credibility and weight, *Schmidt*, ¶ 24, we have also said whether a finding of fact meets a legal standard presents a question of law, fully reviewable on appeal. *Gothberg*, ¶ 10; *cf. State v. Hahne*, 2007 ND 116, ¶ 1, 736 N.W.2d 483 (reversing and remanding when the district court based its suppression order decision on an erroneous view of the law and applied an incorrect legal standard).

[¶31] The State argues the district court erred in finding that Bell did not voluntarily consent to the chemical test and that he was coerced when he was advised he would be criminally charged with a crime if he refused. The State contends the evidence shows Bell was confused by the implied consent advisory when the trooper read it to him and he submitted to the preliminary breath test after a rereading of the advisory. The State asserts the evidence shows that, later at the correctional facility, when the trooper asked him to submit to the Intoxilyzer test and advised him under N.D.C.C. § 39-20-01, Bell responded, "I deny it." The trooper then advised Bell of the additional penalties for refusal of a test, engaged in a conversation on the difference between the preliminary breath test and the chemical test, and read the implied consent advisory a second time after Bell asked to hear it again, after which Bell consented and said, "yes." The State contends there was no "second refusal" when the trooper and Bell had the conversation and Bell himself requested the trooper to read the implied consent advisory once more. The State argues Bell cannot claim coercion when he requested the advisory be read multiple times.

[¶32] Bell responds that the district court properly found he initially refused the trooper's chemical test request and only "consented" when the trooper then threatened Bell with additional criminal charges for refusing. He argues the court did not err when it found, based on the totality of the circumstances, Bell's eventual "consent" was not voluntary and considered the trooper's actions after Bell's initial refusal as part of the inquiry.

[¶33] Bell asserts that the trooper misrepresented the law in giving him the implied consent advisory and did not "accurately advise" him that refusing to submit to the requested chemical test was a crime which carried additional penalties. He argues an individual only commits the offense of refusal under N.D.C.C. § 39-08-01(1)(a)(5)(b) when the person refuses a valid chemical test request "at the direction of law enforcement under section 39-20-01," and the statute's plain language does not criminalize the refusal if the chemical test is requested under another statutory provision, i.e., section 39-20-01.1. He contends his refusal to submit to the trooper's chemical test request was not criminal because the trooper requested a chemical test under section 39-20-01.1, not

14

section 39-20-01—a distinction he argues purportedly recognized in the *Devine* case.

[¶34] Bell also argues N.D.C.C. § 39-20-01.1(3) required the trooper to seek a warrant, rather than threaten him with "nonexistent criminal penalties." He argues this case is analogous to *State v. Hawkins*, 2017 ND 172, ¶ 10, 898 N.W.2d 446 (affirming suppression of chemical test evidence based on totality of circumstances, including unlawful threat of criminal charges). Bell asserts the trooper arrested him for DUI, handcuffed him, and placed him in the back of a patrol car; he initially refused chemical testing; and he only acquiesced when the trooper inaccurately threatened that refusal was a crime. He asserts sufficient competent evidence supports the district court's findings and its decision is not contrary to the manifest weight of the evidence. *See id.* ¶ 6.

[¶35] This Court has explained that after the United States Supreme Court's decision in *Birchfield*, 578 U.S. 438, our decisions in *McCoy*, 2014 ND 119, ¶ 21, and *State v. Fetch*, 2014 ND 195, ¶ 9, 855 N.W.2d 389, "still stand for the proposition that reading an accurate implied consent advisory does not constitute per se coercion and that voluntariness of consent must be determined by the totality of the circumstances." *Fleckenstein*, 2018 ND 52, ¶ 9; *see also City of Jamestown v. Hanson*, 2015 ND 249, ¶ 7, 870 N.W.2d 195 ("[A]n officer's reading of the advisory does not, by itself, constitute coercion."). This Court has also held that under N.D.C.C. § 39-08-01(1)(f) [recodified at N.D.C.C. § 39-08-01(1)(a)(6) in 2023] "claims of coercive implied consent advisories must be measured by constitutional standards rather than under the former statutory exclusionary rule." *Nygaard*, 2021 ND 172, ¶ 17 (quoting *City of Jamestown v. Casarez*, 2021 ND 71, ¶ 14, 958 N.W.2d 467).

[¶36] Here, the trooper gave the implied consent advisory and administered the chemical breath test under N.D.C.C. § 39-20-01. If the trooper gave Bell an accurate implied consent advisory for section 39-20-01, which included advising Bell of the potential criminal charge under N.D.C.C. § 39-08-01(1)(a)(5) for refusing a chemical test under N.D.C.C. § 39-20-01, that would not constitute per se coercion. The issue, therefore, includes whether a separate refusal charge may be included in a case that may also involve N.D.C.C. § 39-20-01.1.

15

B

[¶37] Section 39-08-01, N.D.C.C., "unambiguously provides committing DUI [driving under the influence] or APC [actual physical control] by being under the influence of an intoxicating liquor and refusing to submit to a chemical test are separate offenses and not alternative methods of committing DUI or APC." *State v. Tompkins*, 2023 ND 61, ¶ 12, 988 N.W.2d 556. For noncommercial motor vehicles, section 39-08-01(1)(a) and (2) provide the offense for refusing to submit to a chemical test under section 39-20-01, stating in relevant part:

> 1. a. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:
>
> . . . .
>
> (5) That individual refuses to submit to any of the following:
>
> . . . .
>
> (b) A chemical test, or tests, of the individual's blood, breath, or urine to determine the alcohol concentration or presence of other drugs, or combination thereof, in the individual's blood, breath, or urine, at the direction of a law enforcement officer under section 39-20-01.
>
> (6) Paragraph 5 does not apply to an individual unless the individual has been advised of the consequences of refusing a chemical test consistent with the Constitution of the United States and the Constitution of North Dakota.
>
> . . . .
>
> 2. An individual who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state who refuses to submit to a chemical test, or tests, required under section . . . 39-20-01, is guilty of an offense under this section.

[¶38] The State argues the *Devine* case did not address whether a person may be charged with refusal under N.D.C.C. § 39-08-01 in cases involving N.D.C.C. § 39-20-01.1, and that such a reading of *Devine* is overly broad. We agree. As discussed, the *Devine* case does not stand for the proposition chemical tests may only be "administered under" either N.D.C.C. § 39-20-01 or N.D.C.C. § 39-20-01.1, because *Devine* only addressed whether the former statutory exclusionary

16

rule applied. Further, N.D.C.C. § 39-20-01 and N.D.C.C. § 39-20-01.1 are intended to apply in conjunction with each other. The plain language of N.D.C.C. § 39-20-01.1 does not state the provisions of N.D.C.C. § 39-20-01 cease to apply. Rather, as in the statute's earlier versions, the language only modifies the "legislative grace" or right to refuse under N.D.C.C. § 39-20-04(1) ("If a person refuses to submit to testing under section 39-20-01 or 39-20-14, none may be given . . . ."). In its current version, when the driver refuses to submit to a chemical test, N.D.C.C. § 39-20-01.1(3) requires the officer to seek a search warrant "to compel the driver to submit to a chemical test" when exigent circumstances are not present.

[¶39] Moreover, this Court held "refusal to submit to a chemical test is a separate offense [under N.D.C.C. § 39-08-01(1)(a)(5)] from driving or being in actual physical control while under the influence of intoxicating liquor." *Tompkins*, 2023 ND 61, ¶ 13. Because refusal under N.D.C.C. § 39-08-01(1)(a)(5) constitutes a separate offense, a driver may be charged with refusal even when N.D.C.C. § 39-20-01.1 also applies and the driver is subsequently charged under N.D.C.C. § 39-08-01.2, as long as the law enforcement officer also directed the individual to take a chemical test under N.D.C.C. § 39-20-01 and the individual refused to submit to the test.

[¶40] In its suppression order, we conclude the district court misapplied the law by holding that N.D.C.C. §§ 39-20-01 and 39-20-01.1 are separate and distinct and do not operate in conjunction with each other, and that only N.D.C.C. § 39-20-01.1 controls this case. As explained, however, both statutes may have application in an investigation, and it is a driver's refusal to submit to a chemical test that results in a differing statutory obligation governing how a law enforcement officer must proceed. The court further erred in its analysis in addressing the argument "section 39-20-01 controls at least up to the point that law enforcement makes the determination to charge the Defendant with criminal vehicular injury/death."

[¶41] On this point, the district court made a number of factual findings regarding the trooper's testimony the investigation was only a "standard" DUI investigation. The court found that it was "inconceivable and not credible" the

17

trooper believed the investigation of Bell was only "a standard DUI investigation" and that the facts "clearly establish" the trooper knew this was not a standard traffic crash or a normal case. The court's findings regarding the trooper's belief regarding the type of investigation, however, are not determinative of which statute "controls" and are irrelevant because the court erred as a matter of law in concluding "the entire legal analysis of this motion must be under the dictates of Section 39-20-01.1, and not Section 39-20-01."

[¶42] The district court further erred in its analysis of N.D.C.C. § 39-20-01.1, concluding it required law enforcement either obtain consent or a search warrant, "and there is no third option." While the court correctly noted this case does not include an assertion of exigent circumstances, N.D.C.C. § 39-20-01.1 does not preclude law enforcement from compelling a chemical test based on the "exigent circumstances" exception to the warrant requirement. Moreover, because Bell purportedly consented to take the test, N.D.C.C. § 39-20-01.1(3) would not apply so as to require a search warrant in this case.

[¶43] While the district court considered all of the evidence presented at the hearing and based its decision on the totality of the circumstances, the court erred as a matter of law in its predominant findings that the trooper's giving of the implied consent advisory coerced Bell into consenting to the test. As discussed, both N.D.C.C. §§ 39-20-01 and 39-20-01.1 may be applied in conjunction with an investigation, refusal under N.D.C.C. § 39-08-01(1)(a)(5) constitutes a separate offense, and "reading an accurate implied consent advisory does not constitute per se coercion." *See State v. Vetter*, 2019 ND 43, ¶ 14, 923 N.W.2d 491; *Fleckenstein*, 2018 ND 52, ¶ 9. Because the trooper in this case administered the chemical breath test under N.D.C.C. § 39-20-01, an accurate implied consent advisory under this section would not be coercive.

[¶44] Here, the district court's factual findings also show its determination that Bell's consent was involuntary and coerced were guided by the erroneous view Bell could not be charged with refusal of a test under N.D.C.C. § 39-20-01 because N.D.C.C. § 39-20-01.1 exclusively controlled this case, to the exclusion of N.D.C.C. § 39-20-01. Specifically, the court found Bell "was coerced because in large part he was wrongly informed his consent was required and that he would

18

be criminally charged with another crime if he refused"; Bell "did not finally consent until [the trooper] told him one last time that he was going to be charged with an additional charge"; "the evidence clearly shows it was the threat of additional criminal charges which forced [Bell] to provide a test"; and Bell's "refusal was overcome by the repeated threat of further criminal sanction which was legally false." The court therefore erred as a matter of law in these findings.

[¶45] We have stated "[t]he implied consent statutes are intended to encourage, rather than discourage, taking the screening and chemical tests," and have "long interpreted the implied consent statutes to provide for a driver's ability to 'cure' a refusal to take a chemical test by later agreeing to take the same test." *Skobodzinski v. N.D. Dep't of Transp.*, 2025 ND 84, ¶ 22, 20 N.W.3d 105. The trooper's giving of an accurate implied consent advisory, including discussing and repeating the advisory, would not necessarily constitute coercion when the trooper was administering the test under N.D.C.C. § 39-20-01. Because the district court misapplied the law in construing and applying N.D.C.C. §§ 39-20-01 and 39-20-01.1, and erred as a matter of law in its factual findings to reach its decision to suppress the evidence, we reverse the suppression order.

[¶46] As discussed, "reading an accurate implied consent advisory does not constitute per se coercion" and "voluntariness of consent must be determined by the totality of the circumstances." *Vetter*, 2019 ND 43, ¶ 14 (citation omitted). But, we have also said, "'[c]oercive police activity is a necessary predicate' to a finding that purported consent was not voluntary," *id.* ¶ 9 (quoting *State v. Webster*, 2013 ND 119, ¶ 22, 834 N.W.2d 283), and "[w]hether consent is voluntary is a question of fact." *Id.* (citing *Hawkins*, 2017 ND 172, ¶ 7). The district court did not properly consider the totality of the circumstances and misapplied the law about the implied consent advisory in its decision. We therefore remand for additional findings and a determination of the voluntariness of Bell's consent based upon the totality of the circumstances considering the correct application of law regarding use of an accurate implied consent advisory.

## VI

[¶47] The district court order suppressing evidence is reversed, and the case is remanded for further proceedings consistent with this opinion.

[¶48] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr